

**2999 NE 191st Street, Unit 901 Miami, FL 33180**
**Tel: (877) 253-7686, Fax: (718) 504-3736**
**Email: ar@globalfundingexperts.com**

---

## NOTICE OF ASSIGNMENT PURSUANT TO UCC §9-406

---

### *Please Review Carefully as Failure to Comply With this Notice May Subject You to Monetary Liability*

July 29, 2026

**ITS LOGISTICS LLC,**

Re: **JOT CARGO INC. ("Merchant")**
EIN: **84-5104232**
Address: **2510 WITTKOP WAY**, **APT 43**, **Sacramento, CA 95825**

To Whom It May Concern:

Please be advised that JOT CARGO INC. ("Merchant") assigned $366,030.00 of accounts to United Capital Experts, LLC ("UCE") pursuant to a purchase agreement attached for your reference ("Agreement"). United Capital Experts, LLC ("UCE") has a security interest in the accounts assigned to it by Merchant pursuant to Article 9 of the Uniform Commercial Code that has been perfected as reflected by the attached UCC-1 Financing Statement and/or pursuant to UCC §9-309. As of the date of this notice, a total of $162,361.37 of accounts assigned by Merchant to United First, LLC have not been collected by United Capital Experts, LLC ("UCE") ("Outstanding Receivables Amount"), which includes fees United Capital Experts, LLC ("UCE") is entitled to pursuant to the Agreement

United Capital Experts, LLC ("UCE") understands that you are an account debtor of Merchant. As an account debtor of JOT CARGO INC, pursuant to UCC§9-406(a), upon receipt of this notice, you are obligated to pay any amounts due or may become due to JOT CARGO INC to United Capital Experts, LLC ("UCE") up to the Outstanding Receivables Amount. **After receipt of this Notice, making payment to Merchant rather than United Capital Experts, LLC ("UCE") of any amount presently due or that may become due to JOT CARGO INC rather than paying such amounts to United Capital Experts, LLC ("UCE") may result in you being liable for payment to United Capital Experts, LLC ("UCE") for any such amount paid to Merchant.**

Payment can be made to United Capital Experts, LLC ("UCE") by mailing a check to:

**United Capital Experts, LLC ("UCE")**
**27-01 Queens Plaza North, Suite 802 Long Island**
**City, NY 11101**

Should you have any questions or concerns regarding this Notice, please do not hesitate to contact us at and of the following numbers:

Mobile: 786-408-4809 (Account Rep 1)
Mobile: 646-397-4396 (Account Rep 2)
Office: 347-826-6776

Sincerely,
**United Capital Experts, LLC ("UCE")**



# Secretary of State
**Business Programs Division**
1500 11th Street,  Sacramento, CA 95814

CORPORATION SERVICE COMPANY
CORPORATION SERVICE COMPANY
801 ADLAI STEVENSON DR
SPRINGFIELD, IL  62703

November 29, 2024 6:23 AM

File No.:   U240091828329

## Lien Acknowledgment

This acknowledges the filing of the attached Lien document relavant to the information below. To access free copies of filed UCC documents, enter the File No. above in the Search module on the UCC Online web portal at bizfileonline.sos.ca.gov/search/ucc.

### DEBTOR INFORMATION

| | |
|---|---|
| Debtor Name: | JOT CARGO INC. |
| Debtor Address: | 2510 WITTKOP WAY APT 43 |
| | SACRAMENTO, CA 95825 |

### SECURED PARTY INFORMATION

| | |
|---|---|
| Secured Party Name: | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE |
| Secured Party Address: | PO BOX 2576 UCCSPREP@CSCGLOBAL.COM |
| | SPRINGFIELD, IL 62708 |

### FILING INFORMATION

| | |
|---|---|
| Lien Type: | UCC |
| Lien File No.: | U240091828329 |
| File Date: | 11/29/2024 6:18 AM |
| Lapse Date: | 11/29/2029 11:59 PM |

 

U240091828329

B3227-9633 11/29/2024 6:19 AM Received by California Secretary of State



# STATE OF CALIFORNIA
*Office of the Secretary of State*
## UCC FINANCING STATEMENT (UCC 1)
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

| For Office Use Only |
| :---: |
| **-FILED-** |
| File No.: U240091828329 |
| Date Filed: 11/29/2024 |

Submitter Information:

| | |
| --- | --- |
| Contact Name | CORPORATION SERVICE COMPANY |
| Organization Name | CORPORATION SERVICE COMPANY |
| Phone Number | 18008585294 |
| Email Address | SPRFiling@cscglobal.com |
| Address | 801 ADLAI STEVENSON DR SPRINGFIELD, IL 62703 |

Debtor Information:

| Debtor Name | Mailing Address |
| --- | --- |
| JOT CARGO INC. | 2510 WITTKOP WAY APT 43 SACRAMENTO, CA 95825 |

Secured Party Information:

| Secured Party Name | Mailing Address |
| --- | --- |
| CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | PO BOX 2576 UCCSPREP@CSCGLOBAL.COM SPRINGFIELD, IL 62708 |

Indicate how documentation of Collateral is provided:
Entered as Text

Description:
Secured Party has purchased an interest in and was assigned accounts and proceeds from Debtor described as "Future Receipts" in the agreement between Debtor and Secured Party and, as a result, Secured Party as a security interest in such Future Receipts. "Future Receipts" means all accounts receivable and payment rights, including payments made to Debtor in cash or by check, ACH, or other electronic transfer, credit card, debit card, bank card, charge card, or other form of monetary payment, in the ordinary course of Debtor's business. Debtor and Secured Party intend that the sale of Future Receipts is a sale and not an assignment for security.

Indicate if Collateral is held in a Trust or is being administered by a Decedent's Personal Representative:
Not Applicable

Select an alternate Financing Statement type:

Select an additional alternate Financing Statement type:

Select an alternative Debtor/Secured Party designation for this Financing Statement:

Optional Filer Reference Information:
2985 44678

Page 1 of 1

# OFFER SUMMARY – REVENUE BASED FINANCING

| | | |
|---|---|---|
| **Funding Provided** | $248,401.00 | This is how much funding United First, LLC 340098 will provide. Due to deductions or payments to others, the total funds that will be provided to you directly is $248,401.00. For more information on the amounts that will be deducted, please review the attached document "Itemization of Amount Financed." The total funds provided to you directly may change if the amounts needed to pay toward or satisfy other obligations changes between when we prepared this disclosure and funding. |
| **Estimated Annual Percentage Rate (APR)** | 243.73% | APR is the estimated cost of your financing expressed as a yearly rate. APR incorporates the amount and timing of the funding you receive, fees you pay, and the periodic payments you make. This calculation assumes your estimated average monthly income through sales of goods and services will be $178,816.84. Since your actual income may vary from our estimate, your effective APR may also vary.<br><br>APR is not an interest rate. The cost of this financing is based upon fees charged by United First, LLC 340098 rather than interest that accrues over time. |
| **Finance Charge** | $117,699.00 | This is the dollar cost of your financing. |
| **Estimated Total Payment Amount** | $366,100.00 | This is the total dollar amount of payments we estimate you will make under the contract. |
| **Estimated Monthly Cost** | $44,164.44 | Although you do not make payments on a monthly basis, this is our calculation of your average monthly cost based upon the payment amounts disclosed below. |
| **Estimated Payment** | $10,167.00/Weekly | |
| **Payment Terms** | | <u>Why your payment is "Estimated."</u> We based your payment on 24% of your estimated daily sales revenue. Because we cannot predict the exact dollar amount of sales revenue your business will collect in the future, your payment is "Estimated."<br><br><u>How you can change the payment amount.</u> You have the right to obtain a lower payment amount if your sales revenue decreases. For more details on your right to change the payment amount via Account Reconciliation review, you need to contact your Account Representative via phone (203-674-9313;786-408-4809;646-397-4396) or email us at ar@globalfundingexperts.com.<br><br><u>How we collect your payments.</u> We will debit your business bank account. If a debit is scheduled for a bank holiday, the payment will be debited the next business day, plus the regularly scheduled payment scheduled for that day. |
| **Estimated Term** | 252 days(s) | Based on assumptions we made about your income, this is our estimate of how long it will take to collect amounts due to us under your contract. |
| **Prepayment** | | If you pay off the financing faster than required, you still must pay all or a portion of the finance charge, up to $117,699.00 based upon our estimates.<br>_____<br><br>If you pay off the financing faster than required, you will not be required to pay additional fees. |

**Applicable law requires this information to be provided to you to help you make an informed decision. By signing below, you are confirming that you received this information.**

**Signatory #1 (Name & Title):** ████████████████████ **, President**   **Signature** [signature]   **Date 11/27/2024**

Signatory #1 Initials: [initials]

# ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| 1. Amount Given Directly to You | $248,401.00 |
| 2. Origination Fee | $599.00 |
| 3. Amount paid on your behalf to third parties (3a + 3b + 3c) <br> _____ <br><br> 3a. Not Applicable (N/A) <br> _____ <br><br> 3b. Not Applicable (N/A) <br> _____ <br><br> 3c. Not Applicable (N/A) | $0.00 |
| 4. Amount Paid on Your Account with Us | $0.00 |
| 5. Amount Provided to You or on Your Behalf (1 + 2 + 3 + 4) | $249,000.00 |
| 6. Prepaid Finance Charges: Origination Fee | $599.00 |
| 7. Amount Financed (5 minus 6) | $248,401.00 |

Signatory #1 Initials: _____

Docusign Envelope ID: 2ABC9BE4-8569-4CB8-92AF-2CDC85B4EDCE



# PURCHASE AND SALE OF FUTURE RECEIPTS AGREEMENT

# JOT CARGO INC.

**I hereby certify that ISO - NEW YORK TRIBECA GROUP LLC (nytribecagroup.net) ("Broker") acted as a Merchant's Broker.**

**Completed and attested by:**



| November 27, 2024 | ISO - NEW YORK TRIBECA GROUP LLC (nytribecagroup.net) |
|---|---|
| (Contract Creation Date) | (Broker Name) |



# UNITED FIRST

## United First, LLC 340098

**2999 NE 191st Street, Unit 901 Miami, FL 33180**
**Tel: (877) 253-7686, Fax: (718) 504-3736**
**Email: underwriting@globalfundingexperts.com**

## Purchase and Sale of Future Receipts Agreement

**SELLER'S INFORMATION:**

| | |
|---|---|
| **Seller's Legal Name:** | JOT CARGO INC. |
| **D/B/A:** | JOT CARGO INC. |
| **State of Incorporation:** | CA |
| **Type of Business Entity:** | Corporation |
| **Federal Tax ID:** | 84-5104232 |
| **Physical Address** | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
| **Mailing Address** | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
| **Primary Contact:** | ██████████████████ |
| **Primary Phone Number:** | ██████████ |

**SELLER'S BUSINESS BANK ACCOUNT:**

| | |
|---|---|
| **Name of Bank:** | ████████████ |
| **ABA Transit/Routing #:** | ██████████ |
| **Checking Account #:** | ████████████ |

This Purchase and Sale of Future Receipts Agreement ("Agreement") is made by and between United First, LLC 340098 located at 2999 NE 191st Street, Unit 901 Miami, FL 33180 ("Buyer"), the business identified above ("Seller"), and each Guarantor signing below (each a "Guarantor").

**OFFER TO SELL AND PURCHASE PAYMENT RIGHTS:**

Seller hereby sells, assigns and transfers to Buyer, without recourse, the Purchased Amount and will deliver the Specified Percentage of the proceeds of each future sale made by Seller (collectively "Future Receipts") in accordance with this Agreement. "Future Receipts" means all remittances received by Seller, or its right to receive such remittances, in the ordinary course of Seller's business, including but not limited to (a) remittances made by cash, check, Automated Clearing House ("ACH") or other electronic transfer; (b) remittances, or rights to remittances, made by credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card"); (c) accounts and remittance intangibles; and (d) remittances made by any other form. As remittance for the Purchased Amount, Buyer will deliver to Seller the Purchase Price, shown below, minus any fees shown below.

| | |
|---|---|
| **Purchase Price:** <br> The purchase of Future Receipts may occur in a series of transactions called "Increments". The "Purchase Price" is the amount Buyer will pay for the Future Receipts if all Increments are released. See the Increment Schedule – Special Agreement for details. | $249,000.00 |
| **Purchased Amount of Future Receipts:** <br> The "Purchased Amount" is the amount of Seller's Future Receipts Buyer will purchase from Seller. If Buyer does not complete all the Increments, the actual Purchased Amount will be less than this Purchased Amount. This amount does not include any accrued fees. | $366,030.00 |
| **Origination Fee (Deducted from Purchase Price):** | $599.00 |
| **Net Amount Funded to Seller*:** | $248,401.00 |
| **Seller's Average Monthly Revenue:** | $182,659.02 |
| **Specified Percentage:** | 23% |
| **Periodic Amount** & Frequency***:** | $10,167.00 / Weekly |
| **Initial Estimated # of Payments:** | 36 |

* This is the Purchase Price less the Origination Fee if all Increments are released.
** Refer to Section 2 of this Agreement for how the Periodic Amount can be changed.
*** Refer to Section 1 of this Agreement for how the Frequency can be changed.

Seller has 7 calendar days after the "Contract Creation Date" to review and accept this Agreement by signing and returning the signed Agreement to Buyer. The obligation of Buyer under this Agreement will not be effective unless and until Buyer has completed its review of the Seller and has accepted this Agreement by delivering the Net Amount Funded, shown above, to Seller. Prior to accepting this Agreement, Buyer may conduct a processing trial to confirm its access to Seller's Business Bank Account, shown above (the "Account") and the ability to withdraw the Periodic Amount. If the processing trial is not completed to the satisfaction of Buyer, Buyer will refund to Seller all funds that were obtained by Buyer during the processing trial.

Signatory #1 Initials: _____

THE "PURCHASE AND SALE OF FUTURE RECEIPTS AGREEMENT TERMS AND CONDITIONS", THE "APPENDIX A", AND THE "AUTHORIZATION AGREEMENT FOR AUTOMATED CLEARING HOUSE TRANSACTIONS" ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS PURCHASE AND SALE OF FUTURE RECEIPTS AGREEMENT.

**Agreement of Seller & Each Guarantor:** By signing below, each of the Seller(s) and each of the Guarantor(s) agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes and not for personal, family, or household purposes.

| SELLER: | JOT CARGO INC. | Business Address: | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
|---|---|---|---|
| Signatory & Title: | ▮▮▮▮▮▮▮▮, President | Signature: | *(signed)* |
| Federal Tax ID: | 84-5104232 | Business Phone No.: | ▮▮▮▮▮▮ |
| Business Email: | ▮▮▮▮▮▮ | Text Messaging Enabled No.: | ▮▮▮▮▮▮ |

Notice: This Agreement contains a Personal Guaranty of Performance, and by signing below, Guarantor agrees that Guarantor will be personally liable for the prompt and complete performance of the Guaranteed Obligations as described in the Personal Guaranty of Performance section below.

| GUARANTOR (#1) | | Home Address: | 2510 wittkop way apt 43 sacramento ca 9 |
|---|---|---|---|
| Full Name: | ▮▮▮▮▮▮ | Signature: | *(signed)* |
| Social Security No: | ▮▮▮▮▮▮ | Email: | ▮▮▮▮▮▮ |
| Driver License No: | ▮▮▮▮▮▮ | Cell Phone No.: | ▮▮▮▮▮▮ |

# Purchase and Sale of Future Receipts Agreement Terms and Conditions

**1. Delivery of Purchased Amount.** Seller authorizes Buyer to debit the Periodic Amount from one or more Accounts authorized by Seller for this purpose (each, an "Authorized Account") by either ACH or electronic check. Seller will provide Buyer with all required account information and agrees not to change them without prior written consent from Buyer. Seller will provide an appropriate ACH authorization to Buyer. If any draft or electronic debit is returned for insufficient funds, then Seller will be responsible for any fees incurred by Buyer resulting from a rejected electronic check or ACH debit attempt, as set forth on Appendix A. Buyer is not responsible for any overdrafts or rejected transactions that may result from Buyer's debiting any amount authorized under the terms of this Agreement. Seller understands that the foregoing ACH authorization is a fundamental condition to induce Buyer to accept the Agreement.

In the event that Seller changes or permits changes to an Authorized Account or the ACH authorization approved by the Buyer or adds an additional bank account, Buyer shall have the right, without waiving any of its rights and remedies and without notice to Seller or any Guarantor, to notify the new or additional bank of this Agreement and to direct such new or additional bank to remit to the Buyer all or any portion of the amounts received by such bank.

Furthermore, Buyer and/or Seller have the right to modify the remittance frequency from weekly to daily. In the event that the remittance frequency is modified from weekly to daily, as per the conditions stated above, the new Periodic Amount will be one-fifth (1/5) of the initial weekly Periodic Amount.

**2. Changes to the Periodic Amount (IMPORTANT PROTECTION FOR SELLER).** The initial Periodic Amount is intended to represent the Specified Percentage of Seller's periodic Future Receipts. At any time during the course of this Agreement, Seller or Buyer may request an adjustment to the Periodic Amount to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Seller agrees to provide Buyer any information reasonably requested by Buyer to assist in this reconciliation, including bank statements and providing view-only access to Seller's bank account(s). Within five calendar days of Buyer's reasonable verification of such information, Buyer shall adjust the Periodic Amount on a going-forward basis to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Buyer will notify Seller prior to any such adjustment. After each adjustment made pursuant to this paragraph, the new dollar amount shall be deemed the Periodic Amount until any subsequent adjustment. To request an adjustment to the Periodic Amount call 1-877-253-7686 or email AR@globalfundingexperts.com

**3. Nonrecourse Sale of Future Receipts (THIS IS NOT A LOAN).** Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or remittance schedule and no time period during which the Purchased Amount must be collected by Buyer. Seller acknowledges that it has no right to repurchase the Purchased Amount from Buyer. Buyer assumes the risk that Future Receipts may be remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, and the risk that the full Purchased Amount may never be remitted because Seller's business went bankrupt or Seller otherwise ceased operations in the ordinary course of business. Buyer is buying the Purchased Amount of Future Receipts knowing the risks that Seller's business may slow down or fail, and Buyer assumes these risks based on Seller's representations, warranties and covenants in this Agreement that are designed to give Buyer a reasonable and fair opportunity to receive the benefit of its bargain. By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein. Seller agrees that it will treat the Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns. Seller agrees that Buyer is entitled to audit Seller's accounting records upon reasonable Notice in order to verify compliance. Seller waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Seller asserts that this transaction is anything other than a sale of future receipts.

**4. Fees and Charges.** Other than the Origination Fee, if any, set forth above, Buyer is NOT CHARGING ANY TRANSACTION OR BROKER FEES to Seller. If Seller is charged another such fee, it is not being charged by Buyer. A list of all fees and charges applicable under this Agreement is contained in Appendix A.

**5. Credit Report and Other Authorizations.** Seller and each of the Guarantors signing above authorize Buyer, its brokers and representatives and any credit reporting agency engaged by Buyer, to (i) investigate any references given or any other statements or data obtained from or about Seller or any Guarantor for the purpose of this Agreement; (ii) obtain consumer and business credit reports on the Seller and any Guarantors; and (iii) to contact personal and business references provided by the Seller in the Application, at any time now or for so long as Seller and/or Guarantors continue to have any obligations to Buyer as a consequence of this Agreement or for Buyer's ability to determine Seller's eligibility to enter into any future agreement with Buyer.

**6. Authorization to Contact Current and Prior Banks.** Seller hereby authorizes Buyer to contact any current or prior bank of the Seller in order to obtain whatever information it may require regarding Seller's transactions with any such bank. Such information may include but is not limited to, information necessary to verify the amount of Future Receipts previously processed on behalf of Seller and any fees that may have been charged by the bank. In addition, Seller authorizes Buyer to contact any current or prior bank of the Seller for collections and in order to confirm that Seller is exclusively using an Authorized Account identified above, or any other account approved by Buyer, for the deposit of all business receipts.

**7. Right to Cancel.** Seller understands that Buyer offers Seller a right to cancel this Agreement at any time within two business days after Buyer has delivered the Net Amount Funded. Seller may exercise this right by notifying Buyer that it is cancelling this Agreement and returning the Net Amount Funded to Buyer. For the Seller's right to cancel to be effective, Buyer must receive both the notice and the Net Amount Funded within two business days after the Buyer has delivered the Net Amount Funded.

**8. Financial Information.** Seller authorizes Buyer and its brokers to investigate its financial responsibility and history, and will provide to Buyer any authorizations, bank or financial statements, tax returns, etc., as Buyer deems necessary in its reasonable discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. Buyer is authorized to update such information and financial and credit profiles from time to time as it deems appropriate. Seller waives, to the maximum extent permitted by law, any claim for damages against Buyer or any of its affiliates relating to any investigation undertaken by or on behalf of Buyer as permitted by this Agreement or disclosure of information as permitted by this Agreement.

**9. Transactional History.** Seller authorizes all of its banks and brokers and Payment Card processors to provide Buyer with Seller's banking, brokerage and/or processing history to determine qualification or continuation in this program, or for collections upon an Event of Default.

**10. Application of Amounts Received by Buyer.** Buyer reserves the right to apply amounts received by it under this Agreement to any fees or other charges due to Buyer from Seller prior to applying such amounts to reduce the amount of any undelivered Purchased Amount.

**11. Representations, Warranties and Covenants of Seller.** As of the Contract Creation Date and, unless expressly stated otherwise, continuing until Buyer has received 1) the Purchased Amount and 2) all fees and charges (including legal fees) due under this Agreement, Seller represents, warrants and covenants to Buyer as follows:

a. **No Diversion of Future Receipts.** Seller must deposit all Future Receipts into an Authorized Account on a daily basis and must instruct Seller's credit card processor, which must be approved by Buyer (the "Processor") to deposit all Payment Card receipts of Seller into an Authorized Account on a daily basis. Seller agrees not to (i) change any Authorized Account, (ii) deposit Future Receipts in a bank account that is not an Authorized Account, (iii) revoke Buyer's authorization to debit any Authorized Account, (iv) close any Authorized Account without the express written consent of Buyer or, (v) take any other action that denies, or interferes with, Buyer's rights under this Agreement, including but not limited to Buyer's right to receive its share of revenue received by Seller.

b. **Stacking Prohibited.** Seller shall not enter into any financing agreement that relates to or encumbers its Future Receipts or requires periodic remittances with any party other than Buyer for the duration of this Agreement. Buyer may share information regarding this Agreement with any third party in order to determine whether Seller is in compliance with this provision.

c. **Financial Condition and Financial Information.** Any bank statements and financial statements of Seller that have been furnished to Buyer, and future statements that will be furnished to Buyer, fairly represent the financial condition of Seller at such dates. Buyer may request bank and financial statements at any time during the performance of this Agreement, and the Seller shall provide them to Buyer within five business days of such request. Furthermore, Seller represents that all documents, forms and recorded interviews provided to or with Buyer are true, accurate and complete in all respects, and at the time provided accurately reflect Seller's financial condition and results of operations. Seller further agrees to authorize the release of any past or future tax returns to Buyer.

d. **Governmental Approvals.** Seller is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

e. **Authority to Enter Into This Agreement.** Seller and the person(s) signing this Agreement on behalf of Seller, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

f. **Change of Name or Location or Sale or Closing of Business.** Seller will not conduct Seller's businesses under any name other than as disclosed to Buyer or change any of its places of business without prior written consent of Buyer. Seller will not voluntarily sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without (i) the express prior written consent of Buyer; and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Buyer. Except as disclosed to Buyer in writing, Seller has no current plans to close its business either temporarily, whether for renovations, repairs or any other purpose, or permanently. Seller will not voluntarily close its business on a temporary basis for renovations, repairs, or any other purposes. This provision, however, does not prohibit Seller from closing its business temporarily if such closing is required to conduct renovations or repairs that are required by local ordinance or other legal order, such as from a health or fire inspector, or if otherwise forced to do so by circumstances outside of the control of Seller. Prior to any such closure, Seller will provide Buyer ten business days' notice to the extent practicable.

g. **No Pending or Contemplated Bankruptcy as of the Contract Creation Date.** As of the Contract Creation Date, Seller does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney within six months prior to the Contract Creation Date. Seller further warrants that as of the Contract Creation Date it does not anticipate filing a bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

h. **Seller to Pay Taxes Promptly.** Seller will promptly pay all necessary taxes, including but not limited to employment and sales and use taxes.

i. **No Violation of Prior Agreements.** Seller's execution and performance of this Agreement will not conflict with any other agreement, obligation, promise, court order, administrative order or decree, law or regulation to which Seller is subject, including any agreement that prohibits the sale or pledge of Seller's Future Receipts.

j. **Seller's Knowledge and Representation.** Seller represents, warrants, and agrees that it is a sophisticated business entity familiar with the kind of transaction covered by the Agreement; it was represented by counsel or had full opportunity to consult with counsel.

k. **Accurate and Complete Information.** Seller represents, warrants, and agrees that all information provided to Buyer, all statements made to Buyer relating to this transaction in any way have been truthful, accurate, and complete. Seller further agrees that Seller will be truthful in all future statements to Buyer, and will provide Buyer with truthful, accurate, complete, and timely information regarding Seller's business as required by this Agreement.

**12. Rights of Buyer.**

a. **Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Seller to Buyer pursuant to this Agreement are "accounts" or "remittance intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located (the "UCC") and such sale shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Seller to Buyer. To the extent the Future Receipts are "accounts" or "remittance intangibles" then (i) the sale of the Future Receipts creates a security interest as defined in the UCC; (ii) this Agreement constitutes a "security agreement" under the UCC; and (iii) Buyer has all the rights of a secured party under the UCC with respect to such Future Receipts. Seller further agrees that, with or without an Event of Default, Buyer may notify account debtors, or other persons obligated on the Future Receipts, or holding the Future Receipts, of Seller's sale of the Future Receipts and may instruct them to make remittance or otherwise render performance to or for the benefit of Buyer.

b. **Financing Statements.** Seller authorizes Buyer to file one or more UCC-1 forms consistent with the UCC to give notice that the Purchased Amount of Future Receipts is the sole property of Buyer. The UCC filing may state that such sale is intended to be a sale and not an assignment for security and may state that the Seller is prohibited from obtaining any financing that impairs the value of the Future Receipts or Buyer's right to collect same. Seller authorizes Buyer to debit any Authorized Account for all costs incurred by Buyer associated with the filing, amendment or termination of any UCC filings.

c.   **Right of Access.** In order to ensure that Seller is complying with the terms of this Agreement, Buyer shall have the right to (i) enter during normal business hours, without notice, the premises of Seller's business for the purpose of inspecting and checking Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and or batch Seller's daily receipts to the Processor and to ensure that Seller has not violated any other provision of this Agreement; (ii) Seller shall provide access to its employees and records and all other items as requested by Buyer; and (iii) have Seller provide information about its business operations, banking relationships, vendors, landlord and other information to allow Buyer to interview any relevant parties.

d.   **Phone Recordings and Contact.** Seller agrees that any call between Buyer and Seller, and their brokers and employees may be recorded or monitored. Further, Seller agrees that (i) it has an established business relationship with Buyer, its employees and brokers and that Seller may be contacted from time-to-time regarding this or other business transactions; (ii) that such communications and contacts are not unsolicited or inconvenient; and (iii) that any such contact may be made at any phone number, emails address, or facsimile number given to Buyer by the Seller, its brokers or employees, including cellular telephones.

e.   **ACH Authorization.** Seller represents and warrants that (i) each Authorized Account is Seller's bank account; (ii) the person executing this Authorization on behalf of Seller is an authorized signer on each Authorized Account and has the power and authority to authorize Buyer to initiate ACH transactions to and from each Authorized Account; and (iii) each Authorized Account is a legitimate, open, and active bank account used solely for business purposes and not for personal, family or household purposes. If an ACH transaction is rejected by Seller's financial institution for any reason other than a stop payment order placed by Seller with its financial institution, including without limitation insufficient funds, Seller agrees that Buyer may resubmit up to two times any ACH transaction that is dishonored. Seller's bank may charge Seller fees for unsuccessful ACH entries. Seller agrees that Buyer will have no liability to Seller for such fees. In the event Buyer makes an error in processing any payment or credit, Seller authorizes Buyer to initiate ACH entries to or from the Authorized Account to correct the error. Seller acknowledges that the origination of ACH entries to and from an Authorized Account must comply with applicable law and applicable network rules. Seller agrees to be bound by the Rules and Operating Guidelines of NACHA. Seller will not dispute any ACH transaction initiated pursuant to this Authorization, provided the transaction corresponds to the terms of this Authorization. Seller requests the financial institution that holds an Authorized Account to honor all ACH entries initiated in accordance with this Authorization.

**13. Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default": (a) Seller violates any term or covenant in this Agreement; (b) Seller uses multiple depository accounts without the prior written consent of Buyer; (c) Seller revokes the ACH Authorization; (d) Seller changes any Authorized Account or its payment card processor without the prior written consent of Buyer; or (e) Seller takes any other action that denies, or interferes with, Buyer's rights under this Agreement, including but not limited to Buyer's right to receive its share of revenue received by Seller.

**14. Remedies.** If any Event of Default occurs, Buyer may proceed to protect and enforce its rights including, but not limited to, the following:

a.   The Specified Percentage shall equal 100%. The full undelivered Purchased Amount plus all fees and charges (including legal fees) assessed under this Agreement will become due and payable in full immediately.

b.   Buyer may enforce the provisions of the Personal Guaranty of Performance against each Guarantor.

c.   Seller shall pay to Buyer all reasonable costs associated with the Event of Default. Buyer may proceed to protect and enforce its rights and remedies by arbitration or lawsuit. In any such arbitration or lawsuit, under which Buyer shall recover Judgment against Seller, Seller shall be liable for all of Buyer's costs, including but not limited to all reasonable attorneys' fees and court costs. However, the rights of Buyer under this provision shall be limited as provided in the arbitration provision set forth on arbitration below.

d.   Buyer may debit Seller's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on any of Seller's bank accounts for all sums due to Buyer.

e.   Subject to arbitration as provided in section 30 of this Agreement, all rights, powers and remedies of Buyer in connection with this Agreement may be exercised at any time by Buyer after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**15. Modifications; Amendments.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same is in writing and signed by Buyer.

**16. Assignment.** Buyer may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Seller.

**17. Personal Guaranty of Performance.** Guarantor agrees to irrevocably, absolutely and unconditionally guarantee to Buyer prompt and complete performance of the following obligations of Seller (the "Guaranteed Obligations"):

a.   Seller's obligation to deposit all Future Receipts into an Authorized Account on a daily basis instruct the Processor to deposit all Payment Card receipts of Seller into an Authorized Account on a daily basis;

b.   Seller's obligation to not (i) change any Authorized Account, (ii) deposit Future Receipts in a bank account that is not an Authorized Account, (iii) revoke Buyer's authorization to debit any Authorized Account, (iv) close any Authorized Account without the express written consent of Buyer or, (v) takes any other action that denies, or interferes with, Buyer's rights under this Agreement, including but not limited to Buyer's right to receive its share of revenue received by Seller;

c.   Seller's obligation to provide bank statements and other financial information within five business days after request from Buyer;

d.   Seller's obligation to not conduct Seller's businesses under any name other than as disclosed to Buyer;

e.   Seller's obligation to not change any of its places of business without prior written consent by Buyer;

f.   Seller's obligation to not voluntarily sell, dispose, transfer or otherwise convey its business or substantially all business assets without (i) the express prior written consent of Buyer, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Buyer;

g.   Seller's obligation to not enter into any financing agreement that relates to or encumbers its Future Receipts with any party other than Buyer for the duration of this Agreement without Buyer's prior written consent; and

h.   Seller's obligation to provide truthful, accurate, complete, and timely information as required by this Agreement.

**18. Guarantor Waivers.** Buyer does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under the Agreement and this Personal Guaranty of Performance if it is not notified of: (i) Seller's failure to timely perform any obligation under the Agreement; (ii) any adverse change in Seller 's financial condition or business; (iii) Buyer's acceptance of the Agreement; and (iv) any renewal, extension or other modification of the Agreement or Seller 's other obligations to Buyer. In addition, Buyer may take any of the following actions without releasing Guarantor from any of its obligations under the Agreement and this Performance Guaranty: (i) renew, extend or otherwise modify the Agreement or Seller's other obligations to Buyer; and (ii) release Seller from its obligations to Buyer. Guarantor shall not seek reimbursement from Seller or any other guarantor for any amounts paid by it under the Agreement or this Performance Guaranty. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Seller, or any other guarantor, for any amounts paid by it, or acts performed by it, under the Agreement or this Performance Guaranty: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution.

**19. Guarantor Acknowledgement.** Guarantor acknowledges that Guarantor understands the seriousness of the provisions of the Agreement, including the Jury Waiver, Class Action Waiver and Arbitration sections, and has had a full opportunity to consult with counsel their choice; and have consulted with counsel or have decided not to avail himself / herself / themselves of that opportunity.

**20. Notices.**

a.   **Notices from Buyer.** Buyer may send any notices, disclosures, terms and conditions, other documents, and any future changes to Seller and Guarantor by regular mail or by e-mail, at Buyer's option and Seller and Guarantor consent to such electronic delivery. Notices sent by e-mail are effective when sent. Notices sent by regular mail become effective three calendar days after mailing to Seller's or Guarantor's address set forth in this Agreement.

b.   **Notices from Seller and Guarantor.** Except as provided in section 2, Seller and Guarantor may send any notices to Buyer by e-mail only upon the prior written consent of Buyer, which consent may be withheld or revoked at any time in Buyer's sole discretion. Otherwise, any notices or other communications from Seller and Guarantor to Buyer must be delivered by certified mail, return receipt requested, to Buyer's address set forth in this Agreement. Notices sent to Buyer shall become effective only upon receipt by Buyer.

**21. Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Seller, Buyer and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of Buyer which consent may be withheld in Buyer's sole discretion. Except as set forth in the Arbitration section, this Agreement shall be governed by and construed in accordance with the laws of the State of New York. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if Buyer so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Seller and Guarantor agree that the Acceptable Forums are convenient to it and submit to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller and Guarantor waive any right to oppose any motion or application made by Buyer to transfer such proceeding to an Acceptable Forum. Buyer, Seller and Guarantor further agree that the mailing by United States Postal Service ("USPS") first class mail at the address(es) listed on the Agreement for the seller(s) and guarantor(s), of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

**22. Survival of Representations, Warranties and Covenants.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full.

**23. Interpretation.** All Parties hereto have had the opportunity to review this Agreement with an attorney of their own choosing and have relied only on their own attorney's guidance and advice or have been provided sufficient opportunity to have an attorney of their choosing review the Agreement. No construction determinations shall be made against either Party hereto as drafter.

**24. Entire Agreement and Severability.** This Agreement embodies the entire agreement between Seller and Buyer and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**25. Facsimile Acceptance.** Facsimile signatures, or any other electronic means reflecting the party's signature hereto, shall be deemed acceptable for all purposes. This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement.

**26. Monitoring, Recording, and Solicitations.**

a.   **Authorization to Contact Seller by Phone.** Seller and Guarantor authorize Buyer, its affiliates, brokers and independent contractors to contact Seller or Guarantor at any telephone number Seller or Guarantor provide to Buyer or from which Seller or Guarantor places a call to Buyer, or any telephone number where Buyer believes it may reach Seller or Guarantor, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Seller or Guarantor incurs charges for receiving such communications.

b.   **Authorization to Contact Seller by Other Means.** Seller and Guarantor also agree that Buyer, its affiliates, brokers and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, e-mail and facsimile, to contact Seller and Guarantor. Seller and Guarantor expressly consent to conduct business by electronic means.

**28. JURY WAIVER. THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH PARTY MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ACKNOWLEDGE THEIR RIGHT TO REVIEW THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.**

**29. CLASS ACTION WAIVER. BUYER, SELLER, AND EACH GUARANTOR ACKNOWLEDGE AND AGREE THAT THE AMOUNT AT ISSUE IN THIS TRANSACTION AND ANY DISPUTES THAT ARISE BETWEEN THEM ARE LARGE ENOUGH TO JUSTIFY DISPUTE RESOLUTION ON AN INDIVIDUAL BASIS. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTIES AS A**

REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. TO THE EXTENT ANY PARTY IS PERMITTED BY LAW OR A COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES AGREE THAT: (I) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (II) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

30. <u>ARBITRATION</u>. IF BUYER, SELLER OR ANY GUARANTOR REQUESTS, THE OTHER PARTIES AGREE TO ARBITRATE ALL DISPUTES AND CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT. IF BUYER, SELLER OR ANY GUARANTOR SEEKS TO HAVE A DISPUTE SETTLED BY ARBITRATION, THAT PARTY MUST FIRST SEND TO ALL OTHER PARTIES, BY CERTIFIED MAIL, A WRITTEN NOTICE OF INTENT TO ARBITRATE. IF BUYER, SELLER OR ANY GUARANTOR DO NOT REACH AN AGREEMENT TO RESOLVE THE CLAIM WITHIN 30 DAYS AFTER THE NOTICE IS RECEIVED, BUYER, SELLER OR ANY GUARANTOR MAY COMMENCE AN ARBITRATION PROCEEDING WITH THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR THE FORUM. BUYER WILL PROMPTLY REIMBURSE SELLER OR THE GUARANTOR FOR ANY ARBITRATION FILING FEE, HOWEVER, IN THE EVENT THAT BOTH SELLER AND THE GUARANTOR MUST PAY FILING FEES, BUYER WILL ONLY REIMBURSE SELLER'S ARBITRATION FILING FEE AND, EXCEPT AS PROVIDED IN THE NEXT SENTENCE, BUYER WILL PAY ALL ADMINISTRATION AND ARBITRATOR FEES. IF THE ARBITRATOR FINDS THAT EITHER THE SUBSTANCE OF THE CLAIM RAISED BY SELLER OR THE GUARANTOR OR THE RELIEF SOUGHT BY SELLER OR THE GUARANTOR IS IMPROPER OR NOT WARRANTED, AS MEASURED BY THE STANDARDS SET FORTH IN FEDERAL RULE OF PROCEDURE 11(B), THEN BUYER WILL PAY THESE FEES ONLY IF REQUIRED BY THE AAA OR FORUM RULES. SELLER AND THE GUARANTOR AGREE THAT, BY ENTERING INTO THIS AGREEMENT, THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. BUYER, SELLER OR ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. FURTHER, BUYER, SELLER AND ANY GUARANTOR AGREE THAT THE ARBITRATOR MAY NOT CONSOLIDATE PROCEEDINGS FOR MORE THAN ONE PERSON'S CLAIMS, AND MAY NOT OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING, AND THAT IF THIS SPECIFIC PROVISION DEALING WITH THE PROHIBITION ON CONSOLIDATED, CLASS OR AGGREGATED CLAIMS IS FOUND UNENFORCEABLE, THEN THE ENTIRETY OF THIS ARBITRATION CLAUSE SHALL BE NULL AND VOID. THIS AGREEMENT TO ARBITRATE IS GOVERNED BY THE FEDERAL ARBITRATION ACT AND NOT BY ANY STATE LAW REGULATING THE ARBITRATION OF DISPUTES. THIS AGREEMENT IS FINAL AND BINDING EXCEPT TO THE EXTENT THAT AN APPEAL MAY BE MADE UNDER THE FAA. ANY ARBITRATION DECISION RENDERED PURSUANT TO THIS ARBITRATION AGREEMENT MAY BE ENFORCED IN ANY COURT WITH JURISDICTION. THE TERMS "DISPUTES" AND "CLAIMS" SHALL HAVE THE BROADEST POSSIBLE MEANING.

31. <u>RIGHT TO OPT OUT OF ARBITRATION</u>. SELLER AND GUARANTOR(S) MAY OPT OUT OF THE ARBITRATION PROVISION ABOVE. TO OPT OUT OF THE ARBITRATION CLAUSE, SELLER AND EACH GUARANTOR MUST SEND BUYER A NOTICE THAT THE SELLER AND EACH GUARANTOR DOES NOT WANT THE CLAUSE TO APPLY TO THIS AGREEMENT. FOR ANY OPT OUT TO BE EFFECTIVE, SELLER AND EACH GUARANTOR MUST SEND AN OPT OUT NOTICE TO THE FOLLOWING ADDRESS BY REGISTERED MAIL, WITHIN 14 DAYS AFTER THE CONTRACT CREATION DATE:

> United First, LLC 340098 – ARBITRATION OPT OUT,
> 2999 NE 191st Street, Unit 901 Miami, FL 33180
> ATTENTION: LEGAL DEPARTMENT



**UNITED FIRST**

## APPENDIX A

The Agreement provides that Seller shall be liable for the following amounts, in addition to the Purchased Amount of Future Receipts:

* **ORIGINATION FEE** – This is deducted from Purchase Amount (see Increment Schedule - Special Agreement for details).

* **UCC FILING, AMENDMENT AND TERMINATION FEE** – A one-time $70.00 fee charged at funding, which covers the costs associated with filing, amending, and terminating the UCC lien for the Seller.

* **NON-ACH TRANSACTION FEE** – If Seller makes a remittance other than through ACH, then Seller is responsible for the cost of that transaction.

* **NSF FEE** – $44.00 each.

* **DEFAULT FEE** – The lesser of $12,500.00 or 35% of the undelivered Purchased Amount if Seller defaults under the Agreement, including but not limited to diverting its Receivables from the bank account agreed upon in the "Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits)" or changing its credit card processing thus terminating or diverting the agreed upon split.

* **PRE-AUTHORIZED BANK CHANGE FEE** – $50.00 If Seller requires a change of Bank Account to be debited, requiring Buyer to adjust its system. (This clause does not apply to a "small business" as defined in Cal. Civ. Code § 1799.300(j)).

* **INCREMENT TERMINATION FEE** – A one-time fee of $299.00 payable by the Seller if they choose to stop future Increments. See paragraph 3 (Option to Cease Increments) of Attachment A for details.

* **REMEDIES FEE** – If a default occurs, Seller will be charged a fee to cover the Buyer's costs, including legal expenses. See paragraph 14 of the Agreement for more details.

Signatory #1 Initials: _____

# Verification Form

| | |
|---|---|
| **Seller:** | **JOT CARGO INC.** |
| **Guarantor:** | ▇▇▇▇▇▇▇▇▇▇▇▇▇ |

| | |
|---|---|
| 1.  Do you currently or within the last 90 days have any intentions, plans or discussions regarding closing your Business? | NO |
| 2.  Do you currently or within the last 90 days have any intentions, plans or discussions to change the name or legal structure of the business? | NO |
| 3.  Are you currently in, or contemplating personal bankruptcy? | NO |
| 4.  Are you currently in, or contemplating business bankruptcy? | NO |
| 5.  Is your business currently for sale? | NO |
| 6.  Do you have any existing merchant cash advance balances? | Yes |
| 7.  Are you involved in any litigation proceedings or are a party to a lawsuit? | NO |
| 8.  Is your business currently in default of any agreement with a creditor? | NO |
| 9.  Is your business currently in forbearance agreement with a creditor? | NO |
| 10. Will selling the Future Receipts cause you to breach any agreement with a creditor? | NO |

If you have answered YES to any of the above questions, please explain:

I hereby certify that the above statements are true and correct to the best of my knowledge; I authorize my landlord and credit card processor to discuss confidential account information for the purpose of satisfying the requirements of Buyer.

Completed and attested by:

| **SELLER:** | **JOT CARGO INC.** | **Business Address:** | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
|---|---|---|---|
| **Signatory & Title:** | ▇▇▇▇▇▇▇▇▇▇, President | **Signature:** | _(signed)_ |
| **Federal Tax ID:** | 84-5104232 | **Business Phone No.:** | ▇▇▇▇▇▇ |
| **Business Email:** | ▇▇▇▇▇▇▇▇▇▇ | **Text Messaging Enabled No.:** | ▇▇▇▇ |

| **GUARANTOR (#1)** | | **Home Address:** | 2510 wittkop way apt 43 sacramento ca 9 |
|---|---|---|---|
| **Full Name:** | ▇▇▇▇▇▇▇ | **Signature:** | _(signed)_ |
| **Social Security No:** | ▇▇▇▇ | **Email:** | ▇▇▇▇▇▇▇▇ |
| **Driver License No:** | ▇▇▇▇▇ | **Cell Phone No.:** | ▇▇▇▇▇ |

# AUTHORIZATION AGREEMENT
# FOR AUTOMATED CLEARING HOUSE TRANSACTIONS

JOT CARGO INC. ("Seller") hereby authorizes United First, LLC 340098 ("Buyer") to present automated clearing house (ACH) debits to the following checking account in the amount of fees, remittances, and other payments due to Buyer from Seller under the terms of that Purchase and Sale of Future Receipts Agreement (the "Agreement") entered into between Seller and Buyer, as it may be amended, supplemented or replaced from time to time. Seller also authorizes Buyer to initiate additional entries (debits and credits) to correct any erroneous transfers. In addition, if an Event of Default (as defined in the Agreement) occurs, Seller authorizes Buyer to debit any and all accounts controlled by Seller or controlled by any entity with the same Federal Tax Identification Number as Seller up to the total amount, including but not limited to, all fees and charges, due to Buyer from Seller under the terms of the Agreement.

Seller agrees to be bound by the Rules and Operating Guidelines of NACHA and represents and warrants that the designated account is established and used primarily for commercial/business purposes, and not for consumer, family or household purposes. Seller authorizes Buyer to contact Seller's financial institution to obtain available funds information and/or to verify any information Seller has provided about the designated checking account and to correct any missing, erroneous or out-of-date information. Seller understands and agrees that any revocation or attempted revocation of this Authorization will constitute an event of default under the Agreement for the Purchase and Sale of Future Receipts. In the event that Seller closes the designated checking account, or the designated checking account has insufficient funds for any ACH transaction under this Authorization, Seller authorizes Buyer to contact Seller's financial institution and obtain information (including account number, routing number and available balance) concerning any other deposit account(s) maintained by Seller with Seller's financial institution, and to initiate ACH transactions under this Authorization to such additional account(s). To the extent necessary, Seller grants Buyer a limited Power of Attorney to take action in Seller's name to facilitate this authorization.

**Transfer Funds To/From**:

| | | | |
|---|---|---|---|
| Name of Bank: | ███████ | Seller's Tax ID: | 84-5104232 |
| ABA Transit/Routing #: | ███████ | Checking Account #: | ███████ |
| For the amount of: | $10,167.00 | (Or) Percentage of each Banking Deposit: | 23% |
| On the Following Days: | Weekly* | | |

| | | | |
|---|---|---|---|
| Name of Bank: | ███████ | Seller's Tax ID: | 84-5104232 |
| ABA Transit/Routing #: | ███████ | Checking Account #: | ███████ |
| For the amount of: | $2,033.40 | (Or) Percentage of each Banking Deposit: | 23% |
| On the Following Days: | Daily | | |

* In reference to paragraph 1 under this Agreement.

This authorization is to remain in full force and effect until Buyer has received all amounts due or that may become due to Buyer under the Agreement.

**Seller Information**:

| SELLER: | JOT CARGO INC. | Business Address: | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
|---|---|---|---|
| Signatory & Title: | ███████, President | Signature: | _signed_ |
| Federal Tax ID: | 84-5104232 | Business Phone No.: | ███████ |
| Business Email: | ███████ | Text Messaging Enabled No.: | ███████ |

# Attachment A

## Increment Addendum to the Purchase and Sale of Future Receipts Agreement

This Increment Addendum supplements the Purchase and Sale of Future Receipts between United First, LLC 340098 ("Buyer") and the Seller listed below (the "Seller") dated November 27, 2024, (the "Agreement"). All capitalized terms used in this Addendum shall have the same meaning as defined in the Agreement. Except as modified below, the terms of the Agreement remain in full force and effect.

### SELLER'S INFORMATION:

| | |
|---|---|
| Seller's Legal Name: | JOT CARGO INC. |
| D/B/A: | JOT CARGO INC. |
| State of Incorporation: | CA |
| Type of Business Entity: | Corporation |
| Federal Tax ID: | 84-5104232 |
| Physical Address | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
| Mailing Address | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
| Primary Contact: | ▓▓▓▓▓▓▓▓▓ |
| Primary Phone Number: | ▓▓▓▓▓▓ |

### AGREEMENT AS TO INCREMENTAL PURCHASES

1. <u>Incremental Sale and Purchase of Seller`s Future Receipts:</u> Seller hereby offers to sell and Buyer agrees to purchase, up to the Purchased Amount, Future Receipts according to the attached Increment Schedule.

2. <u>Increment Conditions:</u> Buyer's obligation to complete any Increment is subject to the following conditions ("Increment Conditions"): (a) Seller has not breached the Agreement and no Event of Default has occurred, (b) Seller has provided Buyer with bank statements and such records of Seller's actual Future Receipts reasonably requested by Buyer, or (c) Any representations and warranties provided as of the date of the Contract Creation Date are no longer accurate as of the day of the scheduled Increment. If Increment Conditions are not satisfied as of the scheduled date of any Increment, then Buyer may suspend any remaining Increments either temporarily or permanently at its option. In the event of a suspension, the Seller's obligations to Buyer shall be satisfied by delivery of the Aggregate Purchased Amount.

3. <u>Option to Cease Increments:</u> Either Seller or Buyer may elect at any time to cease any remaining Increments by notifying the other party at least 3 calendar days prior to the next scheduled Increment. If this election is made by Seller after the second Increment, then Seller agrees to pay a one-time Increment Termination Fee of $299.00. The parties agree that the Increment Termination Fee is reasonable to allow Buyer to recoup a portion of costs Buyer will incur to secure future funding for Seller that could have been recouped by Buyer if all Increments had been completed. The parties also agree that such costs will be difficult to determine at the time Increments are ceased. If this election is made by Buyer, then Seller shall not be required to pay the Increment Termination Fee.

4. <u>Buyer's Obligation to Make Future Purchases:</u> Buyer reserves the right to terminate its obligation to make the purchases at its option, if within any thirty (30) day period prior to any weekly purchase contemplated herein: (i) an Event of Default has occurred, as defined in the Agreement; (ii) Seller fails to provide to Buyer a monthly Account statement, and view-only access to Seller's Account upon request; (iii) Seller obtains any additional funding without providing prior written notice to and receiving written approval from Buyer; (iv) the Specified Percentage of its weekly Receipts is not available for ACH by Buyer on any three (3) business days within any twenty (20) business day period; (v) Seller has a 20% decline in monthly deposits that is not due to regular seasonal payment fluctuations; (vi) Buyer believes in its sole judgment that Merchant's business may not be able to generate future Receipts sufficient to deliver the Purchased Receipts in a timely manner, (vi) the Account has a negative balance; or (vii) Seller has failed to provide Buyer with requested bank information. In the event that weekly purchases are terminated, Seller will remain obligated to deliver the Specified Percentage of its weekly Receipts to Buyer until Buyer has received the Receipts Buyer purchased prior to termination, and to comply with all other provisions of this Agreement.

5. <u>Purchased Amount When Receipts Are Purchased In Increments:</u> When Seller sells and Buyer purchases the Purchased Amount, or portions thereof, in Increments, the Seller's obligation to Buyer under the Agreement (excluding any fees and expenses then due and owing) shall at any given point in time be the "Aggregate Purchased Amount" equal to the percentage of the total Purchased Amount that the total of all Purchase Price Increments then paid by Buyer to the Seller bears to Purchase Price as set forth in the Agreement.

THE TERMS OF THIS ATTACHMENT A ARE HEREBY INCORPORATED INTO AND MADE A PART OF THE AGREEMENT IDENTIFIED ABOVE, AND SELLER HEREBY ACKNOWLEDGES THAT THE PERIODIC PURCHASE OF FUTURE RECEIPTS HEREUNDER ARE SUBJECT TO THE TERMS AND CONDITIONS OF THE PURCHASE AND SALE OF FUTURE RECEIPTS AGREEMENT

| SELLER: | JOT CARGO INC. | Business Address: | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
|---|---|---|---|
| Signatory & Title: | ▓▓▓▓▓▓▓▓, President | Signature: | *[signature]* |
| Federal Tax ID: | 84-5104232 | Business Phone No.: | ▓▓▓▓▓▓ |
| Business Email: | ▓▓▓▓▓▓▓ | Text Messaging Enabled No.: | ▓▓▓▓▓ |

| GUARANTOR (#1) | | Home Address: | 2510 wittkop way apt 43 sacramento ca 9 |
|---|---|---|---|
| Full Name: | ▓▓▓▓▓▓ | Signature: | *[signature]* |
| Social Security No: | ▓▓▓▓ | Email: | ▓▓▓▓▓▓▓ |
| Driver License No: | ▓▓▓▓▓ | Cell Phone No.: | ▓▓▓▓ |



## UNITED FIRST

**Increment Schedule - Special Agreement**

### SELLER INFORMATION:

| | |
|---|---|
| **Seller's Legal Name:** | JOT CARGO INC. |
| **D/B/A:** | JOT CARGO INC. |
| **State of Incorporation:** | CA |
| **Type of Business Entity:** | Corporation |
| **Federal Tax ID:** | 84-5104232 |
| **Physical Address** | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
| **Mailing Address** | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
| **Primary Contact:** | ███████████████ |
| **Primary Phone Number:** | ████████ |

| Increment | Purchased Amount | Origination Fee | Net Amount |
|---|---|---|---|
| 1 | $16,725.20 | $599.00 | $16,126.20 |
| 2 | $15,295.20 | $0.00 | $15,295.20 |
| 3 | $15,295.20 | $0.00 | $15,295.20 |
| 4 | $15,295.20 | $0.00 | $15,295.20 |
| 5 | $15,295.20 | $0.00 | $15,295.20 |
| 6 | $15,295.20 | $0.00 | $15,295.20 |
| 7 | $15,295.20 | $0.00 | $15,295.20 |
| 8 | $15,295.20 | $0.00 | $15,295.20 |
| 9 | $15,295.20 | $0.00 | $15,295.20 |
| 10 | $15,295.20 | $0.00 | $15,295.20 |
| 11 | $15,295.20 | $0.00 | $15,295.20 |
| 12 | $15,295.20 | $0.00 | $15,295.20 |
| 13 | $15,295.20 | $0.00 | $15,295.20 |
| 14 | $15,295.20 | $0.00 | $15,295.20 |
| 15 | $15,295.20 | $0.00 | $15,295.20 |
| 16 | $15,295.20 | $0.00 | $15,295.20 |
| 17 | $2,846.80 | $0.00 | $2,846.80 |
| **Total** | **$249,000.00** | **$599.00** | **$248,401.00** |

| **SELLER:** | **JOT CARGO INC.** | **Business Address:** | 2510 WITTKOP WAY APT 43, Sacramento, CA, 95825 |
|---|---|---|---|
| **Signatory & Title:** | ███████████, President | **Signature:** | *[signature]* |
| **Federal Tax ID:** | 84-5104232 | **Business Phone No.:** | ████████ |
| **Business Email:** | ██████████████ | **Text Messaging Enabled No.:** | █████████ |

| **GUARANTOR (#1)** | | **Home Address:** | 2510 wittkop way apt 43 sacramento ca 9 |
|---|---|---|---|
| **Full Name:** | ████████████ | **Signature:** | *[signature]* |
| **Social Security No:** | ██████ | **Email:** | ███████████████ |
| **Driver License No:** | ████████ | **Cell Phone No.:** | ████████ |

Signatory #1 Initials: _____ *[initials]*



## Certificate Of Completion

Envelope Id: 2ABC9BE485694CB892AF2CDC85B4EDCE
Subject: GFE Merchant Contract for JOT CARGO INC..
Source Envelope:
Document Pages: 15
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-05:00) Eastern Time (US & Canada)

Signatures: 11
Initials: 14

Status: Completed

Envelope Originator:
United First Contract Team
27-01 Queens Plaza North, Suite 802
Long Island City, NY  11101
underwriting@globalfundingexperts.com
IP Address: 52.34.56.53

## Record Tracking

Status: Original
    11/27/2024 10:31:36 AM

Holder: United First Contract Team
    underwriting@globalfundingexperts.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| ▉▉▉▉▉▉▉▉<br>▉▉▉▉▉▉▉▉<br>Owner<br>Jot cargo inc<br>Security Level: Email, Account Authentication (None) | DocuSigned by:<br>*[signature]*<br>9EC2368606334B4...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 73.41.91.236<br>Signed using mobile | Sent: 11/27/2024 10:31:37 AM<br>Viewed: 11/27/2024 10:36:53 AM<br>Signed: 11/27/2024 10:42:35 AM |

**Electronic Record and Signature Disclosure:**
    Accepted: 11/27/2024 10:36:53 AM
    ID: a2d95940-3952-44a4-bca4-30a935d56a8f

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Andre L Prioleau Jr<br>andre@globalfundingexperts.com<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 11/27/2024 10:31:39 AM |

**Electronic Record and Signature Disclosure:**
    Not Offered via DocuSign

| | | |
|---|---|---|
| ISO - NEW YORK TRIBECA GROUP LLC<br>(nytribecagroup.net)<br>sales@nytribecagroup.com<br>CEO<br>New York Tribeca Group LLC<br>Security Level: Email, Account Authentication (None) | **COPIED** | Sent: 11/27/2024 10:31:38 AM |

**Electronic Record and Signature Disclosure:**
    Accepted: 6/21/2024 12:15:23 PM
    ID: a36a56f9-7fcc-4ff5-a39f-3da040160980

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Underwriting department<br>underwriting@globalfundingexperts.com<br>United First Team<br>United First LLC<br>Security Level: Email, Account Authentication (None)<br>**Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | **COPIED** | Sent: 11/27/2024 10:31:38 AM<br>Resent: 11/27/2024 10:42:40 AM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/27/2024 10:31:39 AM |
| Certified Delivered | Security Checked | 11/27/2024 10:36:53 AM |
| Signing Complete | Security Checked | 11/27/2024 10:42:35 AM |
| Completed | Security Checked | 11/27/2024 10:42:35 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Global Funding Experts (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Global Funding Experts:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: underwriting@globalfundingexperts.com

**To advise Global Funding Experts of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at underwriting@globalfundingexperts.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Global Funding Experts**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to underwriting@globalfundingexperts.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Global Funding Experts**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to underwriting@globalfundingexperts.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Global Funding Experts as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Global Funding Experts during the course of your relationship with Global Funding Experts.

# UFCE
## United First Capital Experts

### United First, LLC

**2999 NE 191st Street, Unit 901 Miami, FL 33180**
**Tel: (844) 909-0040, Fax: (973) 834-0065**
**Website: https://ufcapitalexperts.com/ / Email: ar@ufcapitalexperts.com**

July 29, 2026

NAVJOTSINGH GHUMAN
JOT CARGO INC.
2510 WITTKOP WAY , APT 43
Sacramento, CA 95825

To Whom It May Concern:

Based on the Purchase and Sale of Future Receipts Agreement(s) ("Agreement(s)") between United First, LLC ("Purchaser") and JOT CARGO INC. ("Merchant") and NAVJOTSINGH GHUMAN ("Owner/Guarantor"), as of July 29, 2026:

Account #340098 (JOT CARGO INC.):
- Total Outstanding Receivable Amount*: $162,361.37

* The amounts include <u>uncleared</u> remittances deducted from the outstanding receivable amount, subject to verification and fund availability.

**Wire Instruction:**
Bank Name: Chase Bank
Address: 187-15 Union Tpke, Flushing, NY 11366
Account Name: United First, LLC
Account Number: 927188935
Routing: 021000021

**For security purposes, please call the phone number above to verify wire instructions before transferring any funds. Do not rely on email instructions alone. We will not be responsible for any fraudulent transactions resulting from email communications.**

Merchant and Owner/Guarantor must continue to make scheduled remittances until the final remittance has been received, cleared, or posted to the account(s).

**DO NOT PLACE A STOP PAYMENT UNTIL PURCHASER HAS PROVIDED A <u>FINAL REMITTANCE CONFIRMATION.</u>**

ANY STOP PAYMENTS BEFORE FINAL REMITTANCE IS CONFIRMED WILL PLACE THE OWNER/GUARANTOR IN A BREACH OF CONTRACT STATUS, RESULTING IN A DEFAULT FEE PER APPENDIX A OF THE AGREEMENT.

Once the final remittance is posted to any open account(s) between Purchaser, Merchant and Owner/Guarantor, the Purchaser will perform a financial audit to such account(s). If the Purchaser identifies any excess remittance during the audit, the Purchaser will refund the same to the Merchant. Additionally, the Purchaser will initiate the termination of the UCC filing only after all open account(s) associated with the Merchant and Owner/Guarantor are officially closed.

We appreciate your cooperation and we thank you for choosing us as your financing partner.

Sincerely,

United First, LLC
Tel: (844) 909-0040, Fax: (973) 834-0065
Email: ar@ufcapitalexperts.com