UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**UNITED CAPITAL EXPERTS, LLC;**
as *Assignee of United First, LLC*,

Plaintiff,

~versus~

**JOT CARGO, INC., and NAVJOTSINGH GHUMAN,**

Defendants.

Case No. 1:26-cv-02719

**MEMORANDUM OF LAW IN RESPONSE TO THE ORDER TO SHOW CAUSE AND IN OPPOSITION TO DEFENDANTS' REQUEST FOR A PRELIMINARY INJUNCTION**

Plaintiff, United Capital Experts, LLC ("UCE"), an assignee of United First, LLC ("UF") (together UCE and UF are referred to herein as the "Respondents") by counsel respectfully submits this Memorandum of Law in Response to Order to Show Cause and in Opposition to Defendants' Request for a Preliminary Injunction.

## INTRODUCTION

The gravamen of Defendants' argument is that they have been harmed by notices that have already been sent that are expressly authorized to be sent by the Uniform Commercial Code. Regardless of what the nature of the transaction is (which Defendants apparently dispute as it is raised in their Memorandum of Law), Defendants ignore that Jot Cargo granted a security interest in accounts and payment intangibles under the Agreement that was properly perfected with the filing of a UCC Financing Statement.[1] Section 9-406 of the Uniform Commercial Code expressly

[1] As will be explained in the factual background the Agreement and UCC Financing Statement were assigned to UCE by UF.

authorizes the sending of the notices there were sent. For this and the other reasons outlined herein, the request for a preliminary injunction seeking to prohibit the exercise of remedies expressly permitted by applicable law should be denied.

## RELEVANT FACTUAL BACKGROUND

On November 27, 2024, Defendants and UF entered into a Purchase and Sale of Future Receipts Agreement ("Agreement"). A true and correct copy of the Agreement is attached to the Complaint as Exhibit A. In Paragraph 12(a) of the Agreement, Jot Cargo granted UF a security interest in accounts and payment intangibles:

> **Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Seller to Buyer pursuant to this Agreement are "accounts" or "remittance intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located (the "UCC") and such sale shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Seller to Buyer. To the extent the Future Receipts are "accounts" or "remittance intangibles" then (i) the sale of the Future Receipts creates a security interest as defined in the UCC; (ii) this Agreement constitutes a "security agreement" under the UCC; and (iii) Buyer has all the rights of a secured party under the UCC with respect to such Future Receipts. Seller further agrees that, with or without an Event of Default, Buyer may notify account debtors, or other persons obligated on the Future Receipts, or holding the Future Receipts, of Seller's sale of the Future Receipts and may instruct them to make remittance or otherwise render performance to or for the benefit of Buyer.

Exhibit A to Complaint, ¶12(a). On November 29, 2024, UF filed a UCC Financing Statement with the California Secretary of State identifying accounts and payment intangibles as its collateral to perfect its security interest in accounts and payment intangibles that was granted to it by Jot Cargo. A copy of the UCC Financing Statement was included in Exhibits A and B that are attached to DN 18.

An Event of Default occurred under the Agreement on February 26, 2025, as outlined in Paragraph 12 of the Complaint. Subsequently, on April 17, 2026, the Agreement and the UCC

Financing Statement were assigned by UF to UCE. A copy of the Assignment Agreement is attached as Exhibit C to the Complaint.[2] On that same date, UCE initiated the instant action for breach of the Agreement in Kings County Supreme Court.

On April 24, 2026, the Defendants answered the Complaint and, notably, did not raise the affirmative defense of usury in their Answer. Defendants likewise did not challenge the Assignment Agreement in any respect in the Answer. Then, on May, 6, 2026, the Defendants removed the action to this Court.

On July 9, 2026, UCE sent a Notice of Assignment pursuant to UCC §9-406 to ITS Logistics, LLC, an account debtor of Jot Cargo, in an attempt recover the accounts receivable it purchased from Jot Cargo under the Agreement. On the notice UCE mistakenly identified UF as the party to the Agreement and the secured party. *See* DN 18-1.

On July 29, 2026, when it realized it had mistakenly identified UF in the notice, UCE sent a corrected Notice of Assignment pursuant to UCC §9-406 to ITS Logistics LLC, identifying UCE as the party to the Agreement and owner of the security interest. *See* DN 18-2.

Pursuant to UCC§ 9-406 upon receipt of a Notice of Assignment, ITS Logistics, LLC was to pay any invoices due to Jot Cargo to UCE. Jot Cargo now seeks a preliminary injunction seeking to prohibit enforcement of a security interest that has already occurred and is expressly permitted by applicable law.

---

[2] Defendants assert the assignment is somehow "bogus" without any real explanation. The fact that UF only assigned its rights under the Agreement, but did not assign liabilities, does not make the assignment unenforceable nor does it have any bearing on the action before this Court. *See* DN 13, which provides a detailed explanation of the law on this issue and why the assignment of the Agreement from UF to UCE was necessary.

## ARGUMENT

**I. A Preliminary Injunction Cannot Enjoin Conduct that is Expressly Authorized by Statute or Applicable Law**

There exists a well-established principle that equity cannot override expressly authorized conduct. *See, e.g., Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 135 S. Ct. 1378, 191 L. Ed. 2d 471 (2015). The practical consequence of this principle for preliminary injunctions is decisive: if the challenged conduct is expressly authorized by applicable law, the movant is not entitled to an injunction because the respondent has a clear legal right to engage in the conduct. As the district court in *Sperry & Hutchinson Co. v. Pommer* stated, the right to engage in legitimate business in lawful ways and by lawful means is sacred and cannot be interfered with by injunction. *Sperry & Hutchinson Co. v. Pommer*, 199 F. 309 (N.D.N.Y. 1912). The Second Circuit has similarly cautioned in *Forschner Group, Inc. v. Arrow Trading Co.* and *Brooks v. Giuliani* that federal courts should hesitate to sweep within an injunction lawful conduct. *Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402 (2d Cir. 1997); *Brooks v. Giuliani*, 84 F.3d 1454 (2d Cir. 1996).

Here, UCE sent notices that it was expressly authorized to send pursuant to UCC §9-406 instructing ITS Logistics, LLC to pay any invoices issued to it by Jot Cargo to UCE. The Uniform Commercial Code is applicable to the transaction because Joe Cargo granted a security interest in connection with the Agreement that was properly perfected with the filing of a UCC Financing Statement. As all Respondents did was engage in conduct expressly authorized by law, this Court cannot enjoin Respondents from engaging in such conduct.

## II. The Preliminary Injunction Should Not be Granted Because the Elements of a Preliminary Injunction Have Not Been Met by Defendants

To obtain a preliminary injunction the moving party must demonstrate,

> (1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in [the movant's] favor; (3) that the balance of hardships tips in [the movant's] favor regardless of the likelihood of success; and (4) that an injunction is in the public interest.

*See Speckman v. Fabrizio, 547 F. Supp. 3d 239, 244 (N.D.N.Y. 2021)*; *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008), *see also Chobani, LLC v. Dannon Co., Inc.*, 157 F. Supp. 3d 190, 199 (N.D.N.Y. 2016) (analyzing changes to Second Circuit preliminary injunction standard and comparing existing standards). The movant must make a "clear showing" that each of these elements is met. *Winter*, 555 U.S. 7, 23 (2008). Here, the Defendants' request for a preliminary injunction must be denied first and foremost, because it cannot make a clear showing that it will suffer irreparable harm if a preliminary injunction is not granted.

### i. *Irreparable Harm*

"[T]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that the injury is likely before the other requirements for an injunction will be considered" *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). The standard to obtain a preliminary injunction based on irreparable harm is extremely high, requiring that the alleged injury be "likely, not merely possible" *German v. Fed. Home Loan Mortg. Corp.*, 899 F. Supp. 1155, 1162 (S.D.N.Y. 1995). Furthermore, irreparable harm does not exist, and thus injunctive relief is not appropriate, where an adequate remedy exists at law. *See Triebwasser & Katz v. Am. Tel. & Tel. Co.*, 535 F.2d 1356, 1359 (2d Cir. 1976); *Loveridge v. Pendleton Woolen Mills, Inc.*, 788 F.2d 914, 918 (2d Cir. 1986).

For this reason, the Second Circuit has consistently held that injunctive relief should be denied when the harm asserted is purely monetary because monetary harm can be remedied through an award of damages. *See Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991); ("[m]onetary loss alone will generally not amount to irreparable harm"); *Wisdom Imp. Sales Co. v. Labatt Brewing Co*., 339 F.3d 101, 113-14 (2d Cir. 2003) ("only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief").

Furthermore, the standard for a preliminary injunction requires that the threat of harm is imminent. To meet the immanency requirement, allegations must be of ***future*** irreparable harm; allegations of past irreparable harm are not sufficient. *See Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010). If the resisting party has been found able to wait for the outcome of the proceedings, the harm cannot be considered imminent for purposes of a preliminary injunction. *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 235 (2d Cir. 1999). These future injuries also cannot be merely speculative. *See St. Joseph's Hosp. Health Ctr. v. Am. Anesthesiology of Syracuse, P.C.*, 131 F.4th 102, 106-07 (2d Cir. 2025) holding allegations of harm including lost customer relationships, lost opportunity costs from reassigning personnel, and reputational damage too speculative)

In light of the foregoing, it is plain the Defendants have not demonstrated that they will suffer irreparable harm if the preliminary is not granted because the harm asserted by the Defendants is purely monetary in nature. In fact, the Defendants assertion of irreparable harm is entirely based on its inability to access the funds held by ITS Logistics, LLC pursuant to the UCC § 9-406 Notice of Assignment. The basis of the asserted harm is an economic injury which can be remedied at law through monetary damages at the conclusion of litigation to the extent the

Defendants were to even prevail. The Defendants cite "the loss of . . . an ongoing business representing many years of effort" as its sole assertion of irreparable harm. *See Roso-Lino Bev. Distr. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 126 (2d Cir. 1984). But, the Defendants' assertion the loss of their business is at risk conjectural at best and does not amount to the requisite showing of likely irreparable harm. In fact, the Defendants have not brought forth any evidence whatsoever that this issue even causally related to Plaintiff's UCC §9-406 notices. Such "speculative injury" is insufficient to obtain injunctive relief.

Additionally, the Defendants must demonstrate that the injury is imminent as well as real. Here, the Defendants cannot do so because the alleged irreparable harm has already occurred. The Plaintiffs cannot unsend a Notice of Assignment. As to the "disgorge[ment of] all wrongly obtained funds," no funds have even been obtained as a result of all – they are solely being held. Absent both the clear finding, supported by evidence, of a real and imminent injury, the Court cannot grant the preliminary injunction. For this reason alone, the preliminary injunction must be denied.

**ii. *Likelihood to Succeed on the Merits or Sufficiently Serious Questions***

As to the second element, the movant must show it is more likely than not to prevail on the underlying claims. This requires a concrete demonstration that the movant's legal position is stronger than the opponent's — that success at trial or on the ultimate merits is probable, not merely possible. Again, the movant must make a "clear showing" to fulfill this element. *Winter*, 555 U.S. 7, 23 (2008).

Here, the Defendants could not have more fatally missed the mark. This is a breach of contract action. They do not provide any evidence that the contract was not breached. They do not cite any case law supporting their argument that they are likely to prevail. They do not cite any

case law supporting their baseless (and irrelevant) accusation that the agreement is a usurious loan. And, again, the affirmative defense of usury was not even raised by Defendants in this action. *See* Answer. It is unclear how Defendants can prevail on a defense never raised (not to mention the fact that the transaction is a sale on its face).

To enforce a right to payment under UCC § 9-406 the secured party may send a signed notice to account debtors identifying the assignment and directing future payments to the purchaser of accounts receivables. Here, UCE properly followed the steps outlined in UCC § 9-406. The sole issue was they initially sent a UCC § 9-406 notice errantly identifying assignee as UF – a mistake that was promptly rectified.

Furthermore, it is unlikely that such a clerical error could even lead to a private cause of action since UCC §9-406 does not expressly create one, and the Defendants have not grounded their complaints with the service of the Notice of Assignment in a parallel common law theory throughout its Memorandum seeking the preliminary injunction. *See Copperwood Cap. LLC v. JAG Staffing & Consulting Servs., Inc.*,No. 20CV1406EKRER, 2021 WL 919871 at *4 (E.D.N.Y. Feb. 10, 2021), *report and recommendation adopted,* No. 20-CV-1406(EK)(RER), 2021 WL 918312 (E.D.N.Y. Mar. 10, 2021)(collecting cases). Thus, the Defendants are likely to be ***unsuccessful*** on the merits.

Vitally, UCC § 9-406 applies to ***both*** outright sales of receivables and loan transactions secured by receivables, so any argument the Defendants have brought regarding the nature of the underlying agreement is irrelevant to UCE's enforcement efforts under the statute. *See Worthy Lending LLC v. New Style Contractors, Inc.*, 39 N.Y.3d 99, 106 (2022)(holding that the term "assignment" under Article 9 encompasses both types of transactions.)

Absent clear showing, supported by evidence, of a likelihood of success on the merits, the Court cannot grant the preliminary injunction. For this reason alone, the preliminary injunction must be denied.

### ***iii. Remaining Requirements: Balance of Equities and Public Interest.***

Caselaw plainly assigns the burden of proving the elements justifying a preliminary injunction to the moving party. *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, the Defendants have not addressed why the balance of equities or the public interest favors granting a preliminary injunction. Absent even the Defendants' signature bare bones allegations unsupported by evidence – the Plaintiffs have nothing to refute. Unaddressed elements of the preliminary injunction claim cannot rise to the level of a "clear showing," and thus, the Court cannot grant it.

## **III. A Token Bond is Insufficient Under the Circumstances**

Rule 65(c) provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The injunction bond "is designed to cover any damages that might result if it were later determined that [the applicant] was not entitled to an injunction." *Rex Med. L.P. v. Angiotech Pharms. (US), Inc.*, 754 F. Supp. 2d 616, 626-27 (S.D.N.Y. 2010)(quoting *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith*, 910 F.2d 1049, 1055 (2d Cir. 1990). The bond also "assures the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and

without regard to the possible insolvency of the plaintiff" *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 557 (2d Cir. 2011).

Here, the Defendants allege Respondents face no harm in being enjoined. However, if the preliminary injunction results in the accounts receivable being paid to Jot Cargo (which is what will occur if the preliminary injunction is granted), Jot Cargo will use the accounts receivable that lawfully belong to UCE (either as a secured party and/or purchaser) and the accounts receivable will no longer be available to UCE with no guaranty that any additional accounts receivable will ever be created that UCE could collect.

Also, there are many recoverable costs from a wrongful injunction including, compliance costs, loss of lien priority, and lost profits during the injunction period. *Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 560 (2d Cir. 2011)(allowing damages for cost of compliance with the order); *Smart Study Co. v. Bichha123*, 505 F. Supp. 3d 322,327 (S.D.N.Y. 2020) (allowing damages for labor costs for complying with a wrongful TRO and lost sales).

To the extent that this Court finds that a preliminary injunction is appropriate (for the reasons previously stated, it is not), the Respondents request that this Court exercise its direction and enter a bond that the Court considers proper to pay the costs and damages sustained by Respondents if the preliminary injunction should later be found wrongful (which Respondents contend should be the $162,273.37 sought in the Complaint).

## **CONCLUSION**

Plaintiffs respectfully request that this Honorable Court deny the Defendants' request for a preliminary injunction and that it grant such other and further relief as this Court deems just and proper.

Dated: August 11, 2026

Respectfully Submitted,

KAMINSKI LAW, PLLC

__*/s/ Shanna M. Kaminski*_____
Shanna M. Kaminski, Esq.
27-01 Queens Plaza North, Suite 802
Long Island City, New York 11101
(248) 462-7111
skaminski@kaminskilawpllc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of August 2026, I filed the foregoing Memorandum of Law in Response to Order to Show Cause and in Opposition to Defendants' Request for a Preliminary Injunction using the Court's CM/ECF system which served the same on the following:

Baruch S. Gottesman bg@gottesmanlegal.com

_*/s/ Shanna M. Kaminski*_____
Shanna M. Kaminski, Esq.